# EXHIBIT A

5 February 2018

# Strategic Pricing Agreement

FreeFlight Systems
8080 Tristar Drive
Irving, TX. 75063

Office: 1.254.495.3077
Point of Contact: Pete Ring
E-mail: pring@freeflightsystems.com

**PROPRIETARY INFORMATION**

The information contained herein is proprietary to FreeFlight Systems and shall not be reproduced or disclosed in whole or in part, nor used for any reason whatsoever including research, development, design, and manufacture, except when such user possesses direct, written authorization from FreeFlight Systems. Information contained herein is exempt from disclosure under the freedom of information act (5 U.S.C. Sec. 552).

**COPYRIGHT NOTICE**

All rights reserved. No part of this publication may be reproduced, distributed, or transmitted in any form or by any means, including photocopying, recording, or other electronic or mechanical methods, without the prior written permission of FreeFlight Systems.

Copyright © FreeFlight Systems 2018

# Revision History

| Revision Author | Date | Reason for Change | Version |
|---|---|---|---|
| Frazier | | Initial Release | - |
| Nevarez | 10-Nov-2015 | Accepted Changes and executed | |
| RING | 05-Feb-2018 | Renewal | |



FREEFLIGHT
SYSTEMS

# Table of Contents

Revision History .......... i
Table of Contents .......... ii
1.0 INTRODUCTION .......... 1
2.0 DEFINITIONS .......... 1
3.0 RESPONSIBILITIES – FreeFlight .......... 2
4.0 RESPONSIBILITIES INDMEX, Inc .......... 3
5.0 WARRANTY .......... 4
6.0 PAYMENT TERMS .......... 6
7.0 TERM AND TERMINATION .......... 6
8.0 PROPRIETARY INFORMATION AND ITEMS .......... 6
9.0 RELEASE OF INFORMATION TO PUBLIC .......... 7
10.0 ORDER OF PRECEDENCE .......... 7
11.0 APPLICABLE LAW/DISPUTE RESOLUTION .......... 7
12.0 INDEMNIFICATION .......... 7
13.0 INSURANCE .......... 8
14.0 LIMITATION OF LIABILITY .......... 8
15.0 NOTICES .......... 8
16.0 SEVERABILITY .......... 9
17.0 FORCE MAJEURE. .......... 9
18.0 ASSIGNMENT .......... 9
19.0 LICENSE .......... 10
20.0 RELATIONSHIP OF THE PARTIES .......... 10
21.0 SURVIVAL .......... 10
22.0 ENTIRE AGREEMENT .......... 10
ATTACHMENT A: .......... 12
ATTACHMENT B .......... 13



FREEFLIGHT
SYSTEMS

# 1.0 INTRODUCTION

This Strategic Purchase Agreement ("SPA") is entered into this 5th of February, 2018 ("Effective Date") by and between INDMEX Corporation (herein "INDMEX"), a Virginia Corporation with primary place of business at 13800 Coppermine Road, Herndon, VA 20171 and FreeFlight Acquisition Corporation DBA FreeFlight Systems ("FreeFlight"), a Nevada corporation, with primary place of business at 3700 Interstate 35 South, Waco, Texas USA 76706 (individually, each a "Party" and collectively, the "Parties".)

The purpose of the SPA is to define the technical requirements and business provisions under which FreeFlight will provide ADS-B compliant (in accordance with the Federal Aviation Administration (FAA) Advisory Circular 150/ 5220-26) equipment to INDMEX, for use in INDMEX's systems solutions.

# 2.0 DEFINITIONS

"**Proprietary Information**" means any information received by one Party (the "receiving party") from the other Party (the "disclosing party") and which the receiving party has been informed, or has a reasonable basis to believe, is confidential to the disclosing party, unless such information: (i) was known to the receiving party prior to receipt from the disclosing party; (ii) was lawfully available to the public prior to receipt from the disclosing party; (iii) becomes lawfully available to the public after receipt from the disclosing party, through no act or omission on the part of the receiving party; (iv) was rightfully communicated by a third party to a receiving party free of any obligation of confidence subsequent to the time of the originating Party's communication thereof to the receiving Party; or (v) is independently developed by an employee or agent of the receiving party who has not received or had access to such information.

"**Product**" means Federal Aviation Administration ("FAA") authorized ADS-B rule compliant equipment, which includes the Vehicle Movement Area Transponder (VMAT) unit and Installation Kit, including components and parts thereof, services, documents, data, software, software documentation and other information or items furnished or to be furnished to INDMEX by FreeFlight, as defined in Attachment A, under any Purchase Order, including tooling.

"**Installation Kits**" means Federal Aviation Administration ("FAA") authorized ADS-B rule compliant equipment as defined in Attachment A, including components and parts thereof, services, documents, data, software, software documentation and other information or items furnished or to be furnished to INDMEX by FreeFlight under any Purchase Order, including tooling.

"**Out of Box Failure**" means an equipment failure upon installation or inspection of the equipment due to manufacturing defect, not defect caused by incorrect installation.



FREEFLIGHT
SYSTEMS

## 3.0 RESPONSIBILITIES – FREEFLIGHT

3.1 Provide ADS-B rule compliant ground vehicle squitter's "Product" to INDMEX. The intent of both parties is to collaborate in the broader market and this SPA may be amended from time to time to reflect this collaboration for these additional markets and associated products.

3.2 Provide Products and support, as per the technical descriptions and product development timeline agreed upon between INDMEX and FreeFlight, or latest version or versions in effect at the time of a purchase order execution.

3.3 Provide Products in accordance with the configurations and pricing provided in Attachment A. Software external to Products and associated Software Tools shall be addressed under separate Software Licensing Agreement.

3.4 Pricing offered herein is fixed for deliveries during the period from the Effective Date through December 31, 2016. Thereafter the pricing shall be subject to annual adjustment. Adjustments will be based on the consumers' price index for the net output of selected industries and their products, not seasonally adjusted for Search, Detection and Navigation Instruments (NAICS 334511) and considered in context with other factors including market, competitors, and any other factors considered relevant by both Parties. All pricing adjustments will be negotiated and mutually agreed to by INDMEX and FreeFlight. At any time should mutual agreement on pricing not occur either party can immediately terminate this SPA with ninety (90) days' notice. Once the adjustment is finalized, the adjustment factor will be determined, and the base prices will be multiplied by the adjustment factor resulting in the adjusted pricing. Annual adjustments will be evidenced by a signed pricing revision table.

3.5 Invoice INDMEX for each shipment, Incoterms EXW Ex Works FreeFlight facility, thirty (30) days net after receipt of an approved invoice.

3.6 Support INDMEX production delivery requirements during the term of the SPA and provide aftermarket support beyond the contract period.

3.7 Orders not in accordance with the INDMEX provided forecast will be negotiated and mutually agreed to by both parties. For all orders, delivery of the entire quantity ordered will be in sixty (60) calendar days from order date unless agreed to by INDMEX. Should INDMEX incur contractual damages due to late delivery of Product caused by FreeFlight, the damages will be equally split between INDMEX and FreeFlight. FreeFlight liability will be limited to the value of the units on the contract. Lead times are subject to reduction via coordination with INDMEX Program Director or Contracts point of contact. All efforts will be made to accommodate INDMEX special order situations. If FreeFlight fails to deliver the units in accordance with this SPA and specifically this Section, then FreeFlight shall be in material breach of this SPA and INDMEX shall have the right to immediately terminate this SPA. If INDMEX actions caused FreeFlight to fail to deliver the units in accordance with Section 2.2, INDMEX will not have the right to immediately terminate the SPA and FreeFlight will have the right to cure the failure.

3.8 FreeFlight will maintain an ADS-B rule compliant ground vehicle squitter exchange pool to service the INDMEX contract and provide quick turnaround for replacement units.

3.9 Provide ADS-B rule compliant ground vehicle squitters with a requirement of delivering at a defect percentage of less than three percent (3%) for each individual order Out of Box Failures. FreeFlight will have one (1) business day upon return of the units to ship an exchange pool unit to INDMEX. If an infield failure is attributed to FreeFlight after



FREEFLIGHT
SYSTEMS

installation is complete, FreeFlight will send a field technician to the customer site to correct the installation at FreeFlight cost. If FreeFlight exceeds the defect percentage of 3% in the delivery of a purchase order, they have thirty (30) days to determine the cause of the failure utilizing their quality systems and to recover the failure in accordance with this SPA. If FreeFlight fails to deliver the units repeatedly (two or more purchase orders in a 12-month period) in accordance with this SPA and specifically this Section, then FreeFlight shall be in material breach of this SPA and INDMEX shall have the right to immediately terminate this SPA.

3.10 Respond within one (1) business day to requests for engineering support or answers to engineering questions. The request must be sent to the FreeFlight Technical Sales Representative in writing and followed-up with a phone call. The contact information for the FreeFlight Technical Sales Representative will be provided to INDMEX and updated as needed by FreeFlight.

3.11 FreeFlight is responsible for all shipping costs, including but not limited to all insurance required, and authorizations for shipments of units on new orders FOB point will be destination. For repairs, FreeFlight will pay for outbound freight only.

3.12 FreeFlight shall employ packaging, containment, handling, and delivery methods and materials for Products, reasonable expected to ensure delivery to INDMEX without damage or degradation.

3.13 FreeFlight will include appropriate documents and information within each shipment including packing list, purchase order number and agreed quality records.

3.14 FSS agrees to allow INDMEX Quality Management to conduct periodic quality audits, consisting of a review of the quality process and any associated paperwork as well as a review of the FreeFlight facility as often as necessary at reasonable times to minimize cost and interruptions.

3.15 FreeFlight agrees to participate with INDMEX in quarterly performance reviews, which will consist of a review to discuss any issues, metrics, and any program issues as well as to evaluate progress in connection with the performance and quality-based goals and objectives.

3.16 FreeFlight agrees to make a good faith effort to meet a 100% on-time delivery performance requirement in accordance with clause 1.8 above. If FreeFlight anticipates that it will not meet the delivery schedule for any Products, INDMEX will be notified as soon as practicable after discovering the anticipated delay, but in no event longer than one (1) business days after such discovery. Without limiting any remedies of INDMEX arising from such delay, FreeFlight shall develop a plan to mitigate the loss and disruption, if any, to INDMEX that would be caused by the anticipated late delivery, including but not limited to expedited deliveries.

# 4.0 RESPONSIBILITIES INDMEX, INC

4.1 Procure ADS-B rule compliant ground vehicle squitter's from FreeFlight in accordance with the terms of this SPA for the airports listed in Attachment B, unless for any reason FreeFlight cannot continue manufacturing compliant ground vehicle squitter's or is in breach of contract. The intent of both parties is to collaborate in the broader market and this SPA may be



amended from time to time to reflect this collaboration for these additional markets and associated products.

4.2 Issue a purchase order (PO) a minimum of forty-five (45) days in advance of anticipated first unit deliveries as applicable to that order, with deliveries on a mutually acceptable schedule. If the order is cancelled subsequent to shipment and the units are returned, a restocking fee of 15% will apply.

4.3 For cumulative purchase order quantities exceeding 100 units in a month or 300 units in a quarter, INDMEX agrees to negotiate a mutually agreed delivery schedule with FreeFlight to prioritize deliveries which could exceed the agreed sixty (60) calendar days agreed in Section 1.8. If INDMEX incurs liquidated damages due to the mutually agreed delivery schedule, INDMEX and FreeFlight will share the liquidated damages equally.

4.4 Provide rolling, non-binding 12-month forecasts of estimated Product configurations and delivery quantity and timing requirements to FreeFlight quarterly. The forecast is for planning purposes only and INDMEX shall not have any financial liability or other obligation whatsoever to FreeFlight except for those liabilities assured by a binding purchase order.

4.5 INDMEX agrees to make a good faith effort to avoid purchase order changes within thirty (30) days of delivery. If INDMEX anticipates needing a change to the delivery schedule within thirty (30) days of delivery, INDMEX will notify FreeFlight as soon as practicable after discovering the change, but in no event longer than three (3) business days after such discovery. Without limiting any remedies of FreeFlight arising from such delivery changes, INDMEX shall develop a plan to mitigate the disruption, if any, to FreeFlight that would be caused by the anticipated delivery changes, including expedited deliveries or de-expedited deliveries. In the case of changes within 30 days of delivery, 100% on-time delivery cannot be guaranteed.

4.6 INDMEX agrees to be responsible for all repair costs for units with customer induced damage. Repair of product will be handled as per section 3.2.

4.7 INDMEX agrees that only FreeFlight caused Out of Box Failures will be used to determine the defect percentage of delivered product. All INDMEX caused or installation caused failures will not be included in the calculation of the failure rate percentage as agreed in Section 1.10.

4.8 Obligated to pay on a timely basis to terms of net thirty (30) days.

## 5.0 WARRANTY

5.1 Product Warranty will be in accordance with the FreeFlight standard Product warranty of twenty-four (24) months, plus up to a six (6) month shelf warranty from the date of delivery of the Product as detailed in Attachment C. The standard twenty-four (24) month warranty period will begin upon installation of the unit(s) or at the time the unit has exceeded the six (6) month shelf warranty. In specific circumstances, the shelf life warranty can be extended beyond the standard six (6) month period with mutual agreement of both parties. Agreement will not be unreasonably withheld. An extended warranty may be purchased either at the time of order placement or upon the expiration of the standard warranty, with thirty (30) days' notice, with the following pricing:



| Extended Warranty Pricing Table | | |
|---|---|---|
| Extended Warranty | Cost for Extension at Time of Purchase | Cost for Extension after Warranty Expiration |
| Twelve (12) Month Extension | $500 | $625 |
| Twenty-Four (24) Month Extension | $1,350 | $1,687 |
| Thirty-Six (36) Month Extension | $2,200 | $2,750 |

5.2 Repair

5.2.1 For out of warranty repair FreeFlight will provide this service on a per-event evaluation price and associated terms of sale. FreeFlight shall at its election either: 1) repair, modify or correct the defective, or 2) replace the defective Product.

5.2.2 The minimum price for the repair of a defective, out-of-warranty unit or a unit with customer induced damage will be $750. Replacement price shall be at the agreed upon Product unit price in effect at the time between INDMEX and FreeFlight. FreeFlight is required to discuss and obtain approval in writing for all out of warranty repairs, including pricing, prior to the start of work. INDMEX will not be required to pay for any non-approved out of warranty repairs.

5.2.3 FreeFlight guarantees a five (5) workday repair turnaround time (TAT) for in-warranty and a twenty-one (21) workday repair TAT for out of warranty Product. TAT does not include time for the customer to respond with an authorization for work when an authorization is required. The TAT guarantee may not apply to modification programs. In addition to provisions for normal repair events, this guarantee includes provisions for the modification/retrofit of Product(s) returned as a result of design deficiencies.

5.3 Returns Under Warranty

5.3.1 FreeFlight will guarantee a one (1) day replacement turnaround for all returned units from INDMEX. The returns will be serviced from an exchange pool inventory of new and refurbished units. The unit provided will have the same remaining warranty as the returned unit. All returned units will go through the FreeFlight repair process per Section 3.2 and upon completion will be returned to the exchange pool as a Certified Refurbished Unit. If FreeFlight fails to provide a replacement unit within two (2) business days of the need for a replacement by INDMEX and INDMEX actions per Section 2.2 did not contribute to FreeFlight' inability to deliver, then FreeFlight shall be in material breach of this SPA and INDMEX shall have the right to immediately terminate this SPA.

5.3.2 INDMEX will notify FreeFlight Customer Service Representative (CSR) of a replacement requirement including the original invoice of the unit, the serial number for the unit, the airport where the unit was deployed and the shipping information for the replacement unit. For requests received during normal business hours (8am to 4pm central standard time) Monday through Friday, FreeFlight CSR will set-up shipment for replacement for delivery via overnight carrier the same day as the replacement request is placed. For requests received after 4pm, the FreeFlight CSR will set-up shipment for replacement for delivery on the next business day. Saturday delivery must be specified by INDMEX as a requirement otherwise delivery will be set-up for the next business day. For replacement requests received on Saturday or Sunday, the replacement will be shipped via overnight carrier on the next business day.

**Strategic Pricing Agreement**
Between FreeFlight Systems and
INDMEX Corporation

5.4 EXCEPT FOR THE WARRANTIES EXPRESSLY PROVIDED IN THIS SPA, EACH PARTY DISCLAIMS ALL OTHER WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

## 6.0 PAYMENT TERMS

6.1 Payment terms are Net Thirty (30) days from date of invoice, FOB FreeFlight facility, in US dollars. Wire transfer facility is available on request.

## 7.0 TERM AND TERMINATION

7.1 The option period of the original SPA was exercised, and the SPA shall be in effect until February 1, 2020. The SPA may be renewed beyond February 1, 2020 by mutual written consent of the Parties 60 days prior the Termination Date and will be subject to the pricing escalation. Further, the ability of INDMEX to procure Product beyond the original term of the SPA shall not be unreasonably withheld by FreeFlight.

7.2 Termination of this SPA shall not release either Party from its obligations to maintain the confidentiality of Proprietary Information made available under this SPA. Such confidentiality obligations shall continue in full force and effect.

7.3 This SPA may be terminated by either Party for breach or insolvency provided, however, that the breaching party be given thirty (30) days from receipt of written notification to remedy the default.

## 8.0 PROPRIETARY INFORMATION AND ITEMS

8.1 Each Party agrees to maintain Proprietary Information received from the other in confidence and not to use or disclose such Proprietary Information, without the prior written approval of the disclosing Party, except as required to comply with any order of a court or any applicable rule, regulation or law of any jurisdiction. Proprietary Information. In the event that a receiving Party is required by judicial or administrative process to disclose Proprietary Information of the disclosing Party, it shall promptly notify the disclosing Party and allow the disclosing Party a reasonable time to oppose such process. Each Party agrees that the Proprietary Information shall be disclosed only on a need-to-know basis to their employees, officers, directors, Affiliates, agents, professional advisors or others that are likewise subject to a confidentiality obligation. Each Party shall protect the Proprietary Information of the other by using the same degree of care, but not less than a reasonable degree of care, to prevent the unauthorized disclosure or use thereof that such Party uses to protect its own Proprietary Information of like nature. The Parties hereby acknowledge that damages may not be an adequate remedy for any breach of this Section 6 and that either Party will therefore be entitled to apply for injunctive relief from any court of competent jurisdiction to restrain any breach or threatened breach of this Section 6. Upon termination or expiration of this SPA, each Party agrees at the request of the other Party to destroy and certify destruction thereof of all Proprietary Information in its possession received from the other save insofar as the receiving Party needs such Proprietary Information to fulfill its post-termination obligations to the other Party or to third-party customers. FreeFlight may divulge, at its discretion, that Harris is a customer of FreeFlight.

Page 6 FFS ______ Seller ______
Proprietary and Confidential to FreeFlight Systems; Subject to a Confidentiality & Non-Disclosure Agreement



FREEFLIGHT
SYSTEMS

## 9.0 RELEASE OF INFORMATION TO PUBLIC

9.1 Neither Party shall release any information concerning this SPA or any other information related to the other Party or this SPA including providing copies of this SPA or identifying the Items sold by or purchased, nor use the name the other Party in any advertising or publicity, except as may be necessary to comply with a subpoena or other proper mandatory legal demand, without the express written consent of the other Party, which consent shall not be unreasonably withheld.

## 10.0 ORDER OF PRECEDENCE

10.1 Except as provided otherwise in a written document executed by authorized representatives of INDMEX and FreeFlight, in the event of any conflict among the provisions of this order, the following order of precedence shall apply in interpreting this order:

A. Individual purchase order for purchase price only;

B. Any mutually agreed upon special or supplemental Terms and Conditions

C. This SPA.

D. Other order Documents

## 11.0 APPLICABLE LAW/DISPUTE RESOLUTION

11.1 This SPA will be governed by, construed and enforced in accordance with the domestic laws of the State of Texas without giving effect to any choice or conflict of law rule (whether of the State of Texas or any other jurisdiction) that would cause the application of laws of any jurisdiction other than the State of Texas.

11.2 Except for certain injunctive judicial relief authorized under this SPA which may be brought at any time, the Parties agree that all disputes between them shall first be submitted to their respective contract administrators for resolution. This SPA will be governed and construed in accordance with the laws of the State of Texas, irrespective of its choice of law rules.

11.3 The sole and exclusive jurisdiction and venue for any action or proceeding arising out of or relating to this SPA will be an appropriate state or federal court located in the City of Dallas. Each Party irrevocably waives, to the fullest extent allowed by applicable law, the defense of an inconvenient forum in any such action or proceeding.

## 12.0 INDEMNIFICATION

12.1 Each Party agrees to indemnify and hold harmless, and upon the other Party's request, defend, the Party, its directors, officers, employees, independent contractors and agents (each an "Indemnified Party") from any and all claims, losses, liabilities, damages, taxes, expenses and costs, including without limitation, judgments, awards, decrees, damages finally awarded or settlement amounts agreed upon, attorney and paralegal fees, costs of investigation, and court costs (collectively, "Losses"), incurred by an Indemnified Party and arising from or related in any way to any of the following:

12.1.1 Either Parties default or breach of any covenant, obligation, representation, or warranty in the SPA;



12.1.2 Any claims that Product or the distribution, sale, offer for sale, use, or importation of Product (whether alone or as an essential part of a system) violates or infringes any third party intellectual property or proprietary rights;

12.1.3 Either Parties negligence or intentionally wrongful acts or omissions; and/or

12.1.4 Any defect, malfunction. Or other failure in any of the Products furnished to INDMEX by furnished hereunder.

12.2 Notwithstanding the foregoing, under no circumstances will an indemnification obligation extend to Losses (or any other loss) to the extent such loss is or was proximately caused by indemnitee's negligence or intentionally wrongful acts or omissions or a defect, malfunction, or other failure of an indemnitee manufactured product.

12.3 The foregoing indemnification obligation is expressly conditioned upon (a) indemnitee's having furnished prompt written notice of such claim and (b) indemnitee's having furnished reasonably necessary information and assistance to settle or defend any such claim. Nevertheless, delay by indemnitee in furnishing indemnitor notice of any claim for which indemnification is sought hereunder shall not discharge indemnitor from its indemnification obligation hereunder, except to the extent such delay results in actual prejudice to indemnitor's ability to defend against such claim.

## 13.0 INSURANCE

13.1 FreeFlight shall procure (and maintain in full force and effect throughout the term of this SPA, and for a period of 3 years following termination, expiration, or completion of this SPA), and furnish proof of coverage for products liability coverage in the minimum amount of ten million dollars ($10,000,000). FreeFlight shall procure (and maintain in full force and effect throughout the term of this SPA) and furnish proof of coverage as requested for property and casualty loss, for general liability, worker's compensation and for errors and omission coverage in the minimum amount of ten million dollars ($10,000,000.00).

## 14.0 LIMITATION OF LIABILITY

14.1 OTHER THAN INDEMNITOR'S INDEMNITY OBLIGATION AS SET FORTH IN SECTION 10 OF THIS SPA, NEITHER PARTY (i) SHALL HAVE ANY LIABILITY ARISING OUT OF OR IN CONNECTION WITH THIS SPA BEYOND OR IN EXCESS OF ACTUAL DIRECT DAMAGES OR (ii) SHALL BE LIABLE TO THE OTHER FOR ANY INCIDENTAL, INDIRECT OR CONSEQUENTIAL DAMAGES WHATSOEVER, INCLUDING (BUT NOT LIMITED TO) LOSS OF USE, REVENUE OR PROFIT, REGARDLESS OF NOTICE, ACTUAL OR CONSTRUCTIVE, OF THE POSSIBILITY OF SUCH DAMAGES. IN NO EVENT SHALL EITHER PARTY BE REQUIRED TO PAY THE OTHER PARTY, EITHER DIRECTLY OR BY SETOFF, ANY PENALTY, INCLUDING LIQUIDATED DAMAGES WITHOUT A BASIS IN ACTUAL OR ANTICIPATED HARM, FOR FAILURE TO PERFORM ANY OF ITS OBLIGATIONS HEREUNDER.

## 15.0 NOTICES

15.1 All notices provided in connection with this SPA will be in writing, and be delivered by first-class mail, postage prepaid, certified or registered mail, postage prepaid and return receipt requested, by courier, or by electronic mail, and will be deemed effective upon receipt by a

Proprietary and Confidential to FreeFlight Systems; Subject to a Confidentiality & Non-Disclosure Agreement



Party at its address stated above, or to such different or other addresses as the Parties may designate by written notice to chief executive officer. Notices shall be sent to the following individuals:

| **INDMEX Corporation** | **FreeFlight Systems** |
|---|---|
| Address:<br>13800 Coppermine Road<br>Herndon, VA 20171 | Address:<br>8080 Tristar Drive<br>Irving, Texas 75063 |
| Phone: 703-935-0386 | Phone: 254-495-3077 |
| E-Mail: cnevarez@indmexaviation.com | E-mail: pring@freeflightsystems.com |

## 16.0 SEVERABILITY

16.1 If any provision of this SPA is held to be illegal, unenforceable or invalid by any court of competent jurisdiction, the remaining provisions hereof shall remain in full force and effect. The failure or delay of either Party to enforce at any time any provision of this SPA shall not constitute a waiver of such Party's right thereafter to enforce each and every provision of this SPA.

## 17.0 FORCE MAJEURE.

17.1 Parties under this SPA shall not be liable for any loss or damage caused by acts of the enemy, acts or regulations or decrees of any Government (de facto or de jure), the elements, earthquakes, floods, fires, riots, war, shipwreck, freight embargoes, unusually severe weather or other similar causes above and beyond the reasonable control of either Party, provided that the Party so affected shall give notice to the other Party in a reasonable period of time, but no later than five (5) business days from the time that Force Majeure conditions occurred, use its best efforts to avoid or remove such causes and continue performance hereunder with the utmost dispatch whenever such causes are removed or settled.

## 18.0 ASSIGNMENT

18.1 Neither Party may assign, charge, transfer, delegate, or otherwise dispose of this SPA or any interests, rights, or obligations herein, in whole or in part, without the prior written consent of the other Party, which consent shall not be unreasonably withheld, delayed, or conditioned. Notwithstanding the foregoing, either party may assign any and all of its rights and obligations hereunder (upon notification to the other Party) to (a) any entity controlling, controlled by or under common control with the assigning Party (an "Affiliate"); (b) a third party pursuant to any sale or transfer of all or part of the assets or business of the Party; or (c) any third party pursuant to or in connection with any financing, merger, consolidation, change in control, reorganization, or other business combination involving the Party.



## 19.0 LICENSE

19.1 Subject to the terms and conditions contained herein, FreeFlight grants to INDMEX a non-transferable, non-exclusive, limited license to use any embedded or otherwise associated software incorporated into the Products, in object code form only for internal use and only for the operation of the Products solely and as fully integrated into the Products. INDMEX agrees not to assign, sublicense, transfer, pledge, lease, or share its rights and agrees not to reverse engineer, reverse assemble, or reverse compile the Products.

## 20.0 RELATIONSHIP OF THE PARTIES

20.1 Nothing in this SPA shall constitute the Parties to be partners or joint ventures with, or agents or employees of, each other. The Parties are independent contractors, and neither Party shall have any right or power to create any obligation or responsibility on behalf of the other Party.

## 21.0 SURVIVAL

21.1 The applicable terms in Sections 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 15, 16, 17 and 18 shall survive termination or expiration of this SPA.

## 22.0 ENTIRE AGREEMENT

22.1 This SPA and any Attachments hereto constitute the entire agreement between the Parties with respect to the subject matter and supersede any prior or contemporaneous agreement or understanding, whether written or oral, if any, between the Parties. The provisions of this SPA shall prevail over any conflicting provisions in any mutually signed purchase order. This SPA is the result of both Parties' review, discussion and negotiation; therefore, any uncertainties or ambiguities will not be interpreted against a Party by virtue of its actual role in preparing this SPA. The section headings appearing in this SPA are inserted only as a matter of convenience and in no way define, limit, construe, or describe the scope or extent of such section or in any way affect this SPA. This SPA may be modified only by a further written agreement signed by both Parties. In addition to the foregoing, this SPA and any signed related document, to the extent signed and delivered by means of digital imaging, electronic mail or a facsimile machine, shall be treated in all manner and respects as an original agreement and shall be considered to have the same binding legal effect as if it were the original signed version thereof delivered in person. This SPA may be signed in counterparts.



**Strategic Pricing Agreement**
Between FreeFlight Systems and
INDMEX Corporation

In witness hereof, the Parties have caused this SPA to be executed by their duly authorized representatives.

For and on behalf of

INDMEX Corporation
13800 Coppermine Drive
Herndon, VA 20171

Carlos A. Nevarez

Principal and Founder

For and on behalf of

FreeFlight Systems
8080 Tristar Drive
Irving, TX 75063

Pete Ring

Vice President, Sales and Marketing

Page 11 FFS ____ Seller ______
Proprietary and Confidential to FreeFlight Systems; Subject to a Confidentiality & Non-Disclosure Agreement



## ATTACHMENT A:

| Kit Number | Description | | Price |
|---|---|---|---|
| 87950-00 | Complete External VMAT System | | $5465.00 |
| | Part Number | Description | |
| | 87900-00 | External Mount VMAT System | |
| | 87946-00 | Installation Kit | |
| | 87948-00 | Optional Mounting Kit | |
| 87949-00 | Basic External VMAT System | | $5336.00 |
| | Part Number | Description | |
| | 87900-00 | External Mount VMAT | |
| | 87947-00 | Control Head | |
| | 87895 | Mounting Shoe | |
| 87895 | Mounting Shoe Only | | $64.00 |
| 87946-00 | Installation Kit Only | | $114.00 |
| | Part Number | Description | |
| | 87901 | Main Unit Connector | |
| | 87942 | Control Head Connector | |
| | 87945-00 | Door Wire Pass Thru | |
| 87948-00 | Optional Mounting Kit | | $15.00 |
| | Part Number | Description | |
| | 87910 | External VMAT Annunciator Hook | |
| | 87944 | External VMAT Annunciator Vent Clip | |



# ATTACHMENT B

## STANDARD LIMITED WARRANTY

### I. HARDWARE

FreeFlight SYSTEMS, LTD. ("FreeFlight"), 3700 INTERSTATE 35 S, WACO, TX 76706, HEREBY WARRANTS TO THE FIRST RETAIL PURCHASER ONLY, THAT HARDWARE PURCHASED HEREUNDER WILL BE FREE FROM DEFECTS IN MATERIAL AND WORKMANSHIP FOR A PERIOD OF TWO (2) YEARS FROM THE DATE OF INSTALLATION, NOT TO EXCEED THIRTY (30) MONTHS FROM THE DATE OF SHIPMENT FROM FreeFlight's FACTORY. SHOULD DEFECTS BE FOUND, FreeFlight AT ITS OPTION, WILL REPAIR OR REPLACE THE PRODUCT IN WHICH PHYSICAL DEFECTS IN MATERIALS OR WORKMANSHIP OCCUR. THE FOREGOING STATES THE SOLE LIABILITY AND OBLIGATION OF FreeFlight ARISING OUT OF THIS WARRANTY, AND SUCH WARRANTY IS SUBJECT TO THE FOLLOWING CONDITIONS AND LIMITATIONS.

(A) THE DEFECT SHALL OCCUR UNDER NORMAL USE AND SERVICE FOR WHICH THIS PRODUCT WAS INTENDED. FreeFlight SHALL NOT BE OBLIGATED OR LIABLE UNDER THIS WARRANTY FOR DEFECTS WHICH FreeFlight's EXAMINATION DISCLOSES ARE DUE TO: (1) TAMPERING, (2) MISUSE, (3) ABUSE, (4) NEGLECT, (5) IMPROPER STORAGE OR MAINTENANCE, (6) USE IN A MANNER BEYOND WHICH SUCH EQUIPMENT IS NORMALLY INTENDED TO BE USED, (7) IMPROPER REPAIR OR POOR WORKMANSHIP BY THOSE WHO ARE NOT AUTHORIZED BY FreeFlight TO REPAIR THE PRODUCTS OR USE OF DEFECTIVE MATERIAL BY SUCH UNAUTHORIZED PERSONS, AND (8) ANY OTHER CAUSE EXCEPT FOR DEFECTS IN MATERIAL OR WORKMANSHIP CAUSED BY FreeFlight.

(B) THE WARRANTY CARD SUPPLIED WITH THE PRODUCT MUST BE COMPLETED AND RETURNED TO FreeFlight WITHIN 15 DAYS OF INSTALLATION OF THE PRODUCT IN ORDER FOR THIS WARRANTY TO BECOME EFFECTIVE.

(C) THE PRODUCT IS SOLD AND INSTALLED BY AN AUTHORIZED DEALER. A LIST OF ALL AUTHORIZED FreeFlight DEALERS MAY BE OBTAINED FROM FreeFlight.

(D) FreeFlight SHALL HAVE NO LIABILITY TO CUSTOMER, TO THE EXTENT THAT ANY CLAIM OF INFRINGEMENT ARISING FROM ANY MODIFICATION, SERVICING OR ADDITION MADE TO THE ITEMS BY ANYONE OTHER THAN FreeFlight OR ITS AUTHORIZED REPRESENTATIVE.

(E) THE PRODUCT SHALL BE RETURNED TO FreeFlight VIA THE DEALER WITH TRANSPORTATION CHARGES PREPAID. AFTER CORRECTION OF THE DEFECTS, THE PRODUCTS WILL BE RETURNED TO THE PURCHASER, TRANSPORTATION CHARGES PREPAID, EXCEPT FOR RETURNS TO PURCHASERS IN FOREIGN COUNTRIES, WHICH PURCHASERS SHALL BE RESPONSIBLE FOR PAYMENT OF SUCH CHARGES FROM THE AMERICAN PORT OF EXIT TO PURCHASER'S PLACE OF BUSINESS. THE RISK OF LOSS OR DAMAGE TO ALL PRODUCTS IN TRANSIT SHALL BE ASSUMED BY THE PARTY INITIATING THE TRANSPORTATION OF SUCH PRODUCTS.

### II. ITEMS NOT COVERED BY WARRANTY

EXCEPT FOR THE EXPRESS WARRANTIES GRANTED IN SECTIONS I ABOVE, FreeFlight MAKES NO OTHER WARRANTIES, EXPRESSED OR IMPLIED, WITH RESPECT TO ITS PRODUCT AND DISCLAIMS THE SAME. FreeFlight MAKES NO EXPRESS OR IMPLIED



WARRANTY WITH RESPECT TO THE DESIGN, ADEQUACY, ACCURACY, RELIABILITY, SAFETY OR CONFORMANCE WITH GOVERNMENT STANDARDS OR REGULATION OF ANY FLIGHT PROCEDURE PRESCRIBED BY A GOVERNMENT AUTHORITY, INCLUDING, BUT NOT LIMITED TO, ANY EXPRESS OR IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. FURTHER, FreeFlight MAKES NO WARRANTY, EXPRESS, OR IMPLIED, WITH RESPECT TO THE ADEQUACY, ACCURACY, RELIABILITY, SAFETY, OR CONFORMANCE WITH GOVERNMENT STANDARDS OR REGULATIONS, OF ANY INFORMATION CONTAINED IN THE PRODUCT WHICH IS PUBLISHED BY OTHERS OR WHICH FreeFlight OBTAINED FROM OTHERS. FURTHER, FreeFlight MAKES NO EXPRESS OR IMPLIED WARRANTY WITH RESPECT TO THE COMPLETENESS OF ANY DATA, FLIGHT INFORMATION, OR FLIGHT PROCEDURE CONTAINED IN ITS PRODUCT. FreeFlight DOES NOT INCLUDE ALL AVAILABLE DATA IN ITS PRODUCT.

**III. LIMITATIONS ON WARRANTY**

THIS WARRANTY IS IN LIEU OF ALL OTHER WARRANTIES EXPRESSED OR IMPLIED, INCLUDING WITHOUT LIMITATION, ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, IF ANY, AND SAID IMPLIED WARRANTIES ARE HEREBY EXPRESSLY EXCLUDED AND DISCLAIMED. WHERE THE PRODUCT IS USED OR PURCHASED PRIMARILY FOR THE PURCHASER'S PERSONAL OR FAMILY USE, ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, IF ANY, ARE HEREBY EXPRESSLY LIMITED TO TWO (2) YEARS FROM THE DATE OF PURCHASE OF THE PRODUCT. SOME STATES DO NOT ALLOW THE EXCLUSION OR LIMITATION OF AN IMPLIED WARRANTY, OR OF INCIDENTAL OR CONSEQUENTIAL DAMAGES; THEREFORE, THE ABOVE LIMITATIONS CONCERNING THE EXCLUSION OF IMPLIED WARRANTIES AND LIMITATIONS OF DAMAGES MAY NOT APPLY TO YOU. THIS WARRANTY GIVES YOU SPECIFIC RIGHTS, AND YOU MAY ALSO HAVE OTHER RIGHTS WHICH VARY FROM STATE TO STATE.

**IV. LIMITATION OF LIABILITY**

FreeFlight's LIABILITY ARISING OUT OF THIS AGREEMENT SHALL NOT EXCEED THE AMOUNTS PAID BY YOU TO OBTAIN THE PRODUCT. FreeFlight SHALL NOT BE LIABLE FOR SPECIAL, CONSEQUENTIAL, INCIDENTAL, OR OTHER TYPES OF DAMAGES, INCLUDING WITHOUT LIMITATION, LOSS OF USE, LOST PROFITS, AND PERSONAL INJURY. FreeFlight EXPRESSLY EXCLUDES AND DISCLAIMS SUCH DAMAGES RESULTING FROM OR CAUSED BY, THE USE, OPERATION, FAILURE, MALFUNCTION OR DEFECT OF ANY FreeFlight PRODUCT, WHETHER OR NOT LIABILITY FOR SUCH DAMAGES IS DUE TO TORT (INCLUDING NEGLIGENCE), CONTRACT, WARRANTY, OR STRICT LIABILITY. THESE LIMITATIONS WILL APPLY EVEN IF FreeFlight OR AN AUTHORIZED DEALER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGE, AND NOTWITHSTANDING ANY FAILURE OF ESSENTIAL PURPOSE OF ANY LIMITED REMEDY. YOU ACKNOWLEDGE THAT THE AMOUNT PAID FOR THE PRODUCT REFLECTS THIS ALLOCATION OF RISK. SOME STATES DO NOT ALLOW THE LIMITATION OR EXCLUSION OF LIABILITY FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES, SO THE ABOVE LIMITATION OR EXCLUSION MAY NOT APPLY TO YOU. To obtain service under this warranty contact: FreeFlight Systems at (254) 662-0000.

FFS ______ Seller ______

Proprietary and Confidential to FreeFlight Systems; Subject to a Confidentiality & Non-Disclosure Agreement